IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **KELLY M. MOODY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 22-cv-177-DES |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff KELLY M. MOODY ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for supplemental security income benefits under Title XVI of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.    Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920(a)(4). This process requires the Commissioner to consider:

(1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) whether the claimant can perform her past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

**II.     Claimant's Background and Procedural History**

On September 12, 2019, Claimant protectively applied for supplemental security income benefits under Title XVI of the Act. (R. 15, 186-94). Claimant alleges she has been unable to work since November 9, 1999, due to bipolar disorder, generalized anxiety disorder, a learning disorder, and depression. (R. 15, 222). Claimant was 29 years old on the date of the ALJ's decision. (R. 26, 36). She has a high school education and no past relevant work. (R. 25, 223).

Claimant's claim for benefits was denied initially and on reconsideration, and she requested a hearing. (R. 78-103, 118). ALJ J. Leland Bentley conducted an administrative hearing and issued a decision on February 26, 2021, finding Claimant not disabled. (R. 15-26, 31-60). The Appeals Council denied review on May 11, 2022 (R. 1-6), rendering the Commissioner's decision final. 20 C.F.R. § 416.1481. Claimant filed this appeal on June 10, 2022. (Docket No. 2).

**III.    The ALJ's Decision**

In his decision, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since her application date of September 12, 2019. (R. 15). At step two, the ALJ found Claimant had severe impairments of depressive disorder, history of idiopathic intercranial hypertension, generalized anxiety disorder, bipolar II disorder, lymphadenopathy, asthma, chiari I malformation, childhood sexual abuse, probable borderline intellectual functioning, obesity, and cyst on elbow of left upper extremity. (R. 17). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 18-20).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following non-exertional limitations:

> [S]he is able to understand, remember, and apply simple multi-step instructions, make simple work decisions, and concentrate and persist for extended periods in order to complete simple multi-step work tasks with routine supervision. She is able to interact with and respond appropriately to others in a stable work setting;

however, she would be limited to occasional work-related interaction with the general public[.] She is able to adapt to a routine work setting where changes are infrequent, well explained, and introduced gradually. She should avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas. She is limited to frequent but not constant reaching, handling, and fingering with the left upper extremity.

(R. 20).

At step four, the ALJ found Claimant had no past relevant work to analyze (R. 25), so he proceeded to step five. There, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Claimant could perform occupations existing in significant numbers in the national economy, including small product assembler I, sub assembler, housekeeping cleaner, touch up screener, clerical mailer, and document preparer. (R. 25-26). Accordingly, the ALJ concluded Claimant was not disabled. (R. 26).

### IV.   Issues Presented

Claimant asserts the ALJ erred by failing to: (1) account for all her impairments and limitations in the RFC and provide a narrative discussion explaining the RFC assessment (Docket No. 13 at 12-13); (2) fully develop the record (*id.* at 11); (3) properly evaluate the medical source opinion of consultative examiner Dr. Patricia Walz (*id*. at 13-16); (4) properly evaluate the consistency of her subjective symptoms (*id.* at 16); and (5) present a hypothetical question to the VE that included all her limitations (*id.* at 16-17). The Court finds no error in the ALJ's decision.

### V.   Analysis

#### A.   ALJ Accounted for Claimant's Impairments and Provided a Sufficient Narrative Discussion

Claimant asserts the ALJ violated Social Security Ruling ("SSR") 96-8p by failing to explain how the medical and non-medical evidence supports his determination that Plaintiff could perform light work. (Docket No. 13 at 12-13).

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week, despite her medical impairments and symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). As part of the RFC assessment, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. Stated differently, the ALJ must explain the basis for the limitations included in the RFC, with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence" of record were considered and resolved. *Id.* Furthermore, if the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

The ALJ's decision satisfies these narrative requirements. In assessing Claimant's physical limitations, the ALJ thoroughly discussed Plaintiff's testimony and the findings of her treating, consultative, and reviewing physicians regarding Claimant's back pain, headaches, Arnold-Chiari syndrome, shunt placement, and obesity in the RFC discussion. (R. 21-25). In discussing the opinion evidence, the ALJ found partially persuasive the state agency physicians' opinion that Claimant's physical impairments were non-severe, and specifically explained that he included physically-based limitations in the RFC "out of an abundance of caution" and to account for Claimant's surgical repair of an Arnold-Chiari malformation (shunt), asthma, subjectively reported back pain, obesity, subjectively reported left upper extremity numbness, and history of left elbow cyst. (R. 24-25). As to Claimant's mental impairments, the ALJ likewise discussed Plaintiff's testimony and the findings of her treating, consultative, and reviewing physicians. (R. 20-24). As set forth above, the ALJ found Dr. Walz's opinion unpersuasive. (R. 23-24). However, the ALJ found persuasive the state agency psychologists' opinion that Claimant could relate to supervisors

and peers on a superficial work basis, perform simple tasks with routine supervision, focus for two-hour periods with routine breaks, pace and persist for an eight-hour work day and 40-hour work week despite psychological symptoms, and adapt to a routine work situation. (R. 24). Thus, the ALJ considered all the evidence related to Claimant's impairments and explained how such evidence supported the RFC. Notably, the longitudinal evidence in the record does not reflect further limitations. There is no medical source opinion regarding Claimant's physical impairments that identifies limitations greater than those included in the RFC assessment, the ALJ adopted the state agency psychologists' opinion, and he properly found Dr. Walz's opinion unpersuasive. The Court thus finds the ALJ considered all the evidence related to Claimant's impairments and sufficiently explained how such evidence supported the RFC assessment. *See Barnett v. Apfel,* 231 F.3d 687, 689 (10th Cir. 2000) ("the ALJ is charged with carefully considering all the relevant evidence and linking his findings to specific evidence."). Because Claimant points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence and interpret in her favor, which it cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted).

  **B.  ALJ Sufficiently Developed the Record**

  Claimant next contends the ALJ failed to fully develop the record as to the limitations resulting from her probable borderline intellectual functioning. Specifically, Claimant argues remand is required so that Claimant may undergo IQ testing.

  Although the burden to prove disability is on Claimant, a social security disability hearing is non-adversarial, and the ALJ must ensure that "an adequate record is developed during the

disability hearing consistent with the issues raised." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004) (quoting *Henrie v. U.S. Dep't of Health & Hum. Servs.,* 13 F.3d 359, 360-61 (10th Cir. 1993)). The ALJ's duty is limited to fully and fairly developing the record as to material issues. *Hawkins v. Chater,* 113 F.3d 1162, 1168 (10th Cir. 1997) (quotation omitted).

Developing the record may involve ordering consultative examinations and testing. To establish the need for a consultative examination, a claimant must "in some fashion raise the issue sought to be developed, which on its face, must be substantial." *Id.* at 1167 (citations omitted). If a claimant is represented by counsel, "the ALJ should ordinarily be entitled to rely on the claimants counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Id.* If counsel does not request a consultative examination, courts "will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record." *Id.* at 1168.

Consultative examinations may be used to "secure needed medical evidence, such as clinical findings, laboratory tests, a diagnosis, or prognosis" where there is "an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision . . . ." 20 C.F.R. § 416.919a(b). Specific examples of instances where a consultative examination may be required, include:

> (1) The additional evidence needed is not contained in the records of . . . medical sources; (2) The evidence that may have been available from . . . treating or other medical sources cannot be obtained for reasons beyond [the claimant's] control . . .; (3) Highly technical or specialized medical evidence that [the ALJ] need[s] is not available from . . . treating or other medical sources; or (4) There is an indication of a change in [the claimant's] condition that is likely to affect [her] ability to work, but the current severity of [her] impairment is not established.

*Id.; see also Hawkins,* 113 F.3d at 1166 (stating that a consultative examination is often required if there is a direct conflict in the medical evidence or the medical evidence is inconclusive and may be necessary where additional testing is required to explain a diagnosis).

Contrary to Claimant's assertion, the ALJ was not required to further develop the record by obtaining IQ testing because there was "no inconsistency or insufficiency" for additional testing to resolve. 20 C.F.R. § 416.920b. The ALJ is not required to further develop the record if there is sufficient information for the ALJ to make a disability determination. *Cowan v. Astrue,* 552 F.3d 1182, 1187 (10th Cir. 2008).

The medical evidence of record regarding Claimant's intellectual functioning includes Dr. Walz's consultative examination and opinion as well as numerous mental status examinations performed by various providers. (R. 503-37, 603-14, 627-31, 644-64, 669-708, 744-53). As the ALJ correctly noted, although this evidence establishes that Dr. Walz diagnosed Claimant with probable borderline intellectual functioning, it also shows Claimant was consistently alert and oriented, and consistently had normal cognitive functioning, unimpaired memory, and an adequate fund of knowledge. (R. 24). Moreover, as the ALJ also correctly noted, Claimant successfully parents two small children, drives them to and from school, and cares for her personal and household needs. (*Id.*) Claimant points to no direct conflict in the medical evidence, inconclusive medical evidence, or additional tests needed to explain her diagnoses. *See Hawkins,* 113 F.3d at 1166. The ALJ had sufficient evidence to make a disability determination, and the need for additional testing is not clearly established in the record.

    C.    **ALJ Properly Evaluated Dr. Walz's Opinion**

For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c. A "medical opinion" is a statement from a medical source about what a

claimant "can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions" in four work-related abilities. 20 C.F.R. § 416.913(a)(2). These abilities include the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting . . . ." 20 C.F.R. § 416.913(a)(2)(i). If the record contains a medical opinion, the ALJ must consider and address it in the RFC assessment, and, if the RFC conflicts with the opinion, the ALJ "must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The ALJ does not "defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . ." 20 C.F.R. § 416.920c(a). Instead, the ALJ evaluates the "persuasiveness" of medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (including length, purpose, and extent of treatment relationship, frequency of examinations, and examining relationship); (4) specialization; and (5) other factors that tend to support or contradict the opinion or finding. 20 C.F.R. § 416.920c(a), (c). Supportability and consistency are the most important factors, and the ALJ must always explain how he considered those factors in the decision.[1] 20 C.F.R. § 416.920c(b)(2). The ALJ is not required to articulate findings on the remaining factors unless there are two or more medical opinions about the same issue that are equally well-supported and consistent with the record, but not identical. 20 C.F.R. § 416.920c(b)(2), (3).

---

[1] Supportability refers to the relevancy of "the objective medical evidence and supporting explanations presented by a medical source" to support his medical opinion. 20 C.F.R. § 416.920c(c)(1). Consistency refers to the consistency of a medical source opinion "with the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2).

On January 28, 2021, Dr. Walz conducted a consultative mental status examination of Claimant. (R. 749-53). Dr. Walz observed Claimant had an anxious mood, congruent affect and slow cognition. (R. 751). She estimated Claimant's intellectual functioning to be in the 75-79 range. *Id.* Dr. Walz diagnosed Claimant with bipolar disorder, PTSD, and probable borderline intellectual functioning. (R. 752). Dr. Walz opined that: (1) Claimant's social skills were impaired by anxiety and irritability, (2) she would have difficulty understanding and retaining complex instructions, (3) her attention and concentration were mildly impaired, (4) her PTSD symptoms and irritability would interfere with her ability to complete tasks, and (5) her speed of information processing was slow. (R. 753). Dr. Walz recommended either IQ testing or obtaining Claimant's school records, but noted she was not doing face-to-face testing until the pandemic was "well in hand." *Id.*

The same day, Dr. Walz also completed a form titled "Medical Source Statement Secondary to Mental Impairments." (R. 744-48). The form asked for an opinion on the degree of Claimant's limitations in various functional areas – either none, mild, moderate, marked, severe, or extreme – resulting from Claimant's mental impairments.[2] Dr. Walz checked boxes indicating Claimant was extremely limited in her ability to maintain a consistent pace at the speed required to satisfactorily perform the particular function and to perform in a densely-densely populated environment. (R. 745, 747). Dr. Walz checked boxes indicating Claimant was severely limited in

---

[2] The form defined "none" as "[n]o limitations. If present, they are transient and/or expected reactions to psychological stresses and cause no diminution in performance." (R. 744). Mild limitation was defined as "[s]light limitation (0-5%), but the individual can generally adequately function." Moderate limitation was defined as "[f]rom six to twenty percent (6-20%) of the time, the individual will be off-task, performing below industry norms." (*Id.*) Marked limitation was defined as "[f]rom twenty-one to thirty-five percent (21-35%) of the time, the individual cannot usefully perform or sustain the function." (*Id.*) Severe limitation was defined as "[f]rom thirty-six to fifty percent (36-50%) of the time, very seriously impairs the ability to perform work by interfering with either social relations or occupational functioning, or some in both." (*Id.*) Finally, extreme limitations was defined as "[t]here is a major limitation in performance with no useful or sustained ability to function from fifty-one to one hundred percent (51-100%) of the time." (*Id.*)

8 of the 35 functional areas she assessed, including Claimant's ability to interact with the general public, maintain attention and concentration for extended periods of time, and carry out detailed or complex instructions. (R. 744-45). Dr. Walz checked boxes indicating Claimant was markedly limited in 11 of the 35 functional areas she assessed, including Claimant's ability to carry out very short and simple instructions, understand and remember detailed or complex instructions, and perform at a consistent pace without an unreasonable number or length of rest periods. (R. 745). Dr. Walz checked boxes indicating Claimant was moderately limited in the remaining 14 functional areas she assessed, including Claimant's ability to relate to co-workers, interact with supervisors, understand and remember very short and simple instructions, and respond appropriately to changes in the work setting. (R. 744-46). As support for her limitations, Dr. Walz noted Claimant's diagnoses of bipolar disorder, PTSD (secondary to childhood sexual abuse), and probable borderline intellectual functioning.

In discussing the medical source opinion evidence, the ALJ concluded Dr. Walz's opinions were unpersuasive. (R. 24). In support of this determination, the ALJ noted Dr. Walz's opinions were inconsistent with: (1) multiple unremarkable mental status examinations of record; (2) Claimant's lack of inpatient psychiatric treatment; (3) Claimant's refusal to attend therapy; (4) the third party function report completed by Claimant's husband indicating Claimant managed funds and shopped in stores; and (5) Claimant's daily activities, including independent living, housework, and caring for her children. (R. 24). The ALJ further noted that Dr. Walz did not interview Claimant in person and did not perform any objective testing. *Id.*

Claimant asserts that the ALJ's reasons for rejecting Dr. Walz's opinion are not supported by substantial evidence because they are either factually incorrect or legally prohibited from consideration. (Docket No. 13 at 14-16). As support for her factually-related assertions, Claimant

contends that advance practice registered nurse Mary Smith-Crase's treatment notes show similar findings as Dr. Walz. (Docket No. 13 at 14). However, the ALJ discussed Ms. Smith-Crase's treatment notes in reaching his decision, correctly noting that her treatment notes reflect improvement in Claimant's symptoms with medications and normal mental status examinations. (R. 21-22, 24). Claimant simply disagrees with the ALJ's interpretation of the evidence. However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Cowan,* 552 F.3d at 1185. Moreover, even if the evidence could support a different finding, the Court cannot "displace the agency's choice between two fairly conflicting views . . . ." *Id.* Because Claimant points to no evidence the ALJ overlooked, her arguments amount to a request that the Court reweigh the evidence and interpret in her favor, which it cannot do. *Hackett v. Barnhart,* 395 F.3d 1168, 1172 (10th Cir. 2005) ("We consider whether the ALJ followed the 'specific rules of law that must be followed in weighing particular types of evidence in disability cases,' but we will not reweigh the evidence or substitute our judgment for that of the Commissioner's." (citations omitted). As to Claimant's assertion that the lack of inpatient psychiatric care is not a standard that the ALJ is permitted to utilize in evaluating the persuasiveness of a medical opinion, the Court disagrees. The nature and extent of Claimant's mental health treatment is relevant to the ALJ's analysis of the consistency of Dr. Walz's opinion with other evidence of record. In any event, even assuming Claimant's lack of inpatient mental health treatment was improperly considered, the ALJ gave numerous other reasons, supported by the record, for finding Dr. Walz's opinion inconsistent with the evidence of record. Likewise, although the ALJ's use of Dr. Walz's telehealth appointment procedure as a reason to discount her opinion is questionable, the decision makes clear that the ALJ did not base his persuasiveness analysis on this finding alone.

Accordingly, the Court finds the ALJ's determination that Dr. Walz's opinions were unpersuasive is supported by substantial evidence.

**D.  ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms**

Claimant contends the ALJ erred in evaluating her subjective symptoms. Claimant specifically asserts the ALJ did not offer any discussion or justification for discounting Claimant's symptoms. (Docket No. 13 at 16).

As part of the RFC determination, the ALJ is required to consider Claimant's subjective complaints, or symptoms.[3] 20 C.F.R. § 416.929(a) &(d)(4). The Commissioner uses a two-step process to evaluate a claimant's symptoms.[4] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 416.929. First, the medical signs or laboratory findings must establish a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p at *3. The ALJ then evaluates the intensity and persistence of the claimant's symptoms and determines how such symptoms limit her ability to perform work-related activities. *Id.*

Factors the ALJ considers when evaluating a claimant's symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of

---

[3] Symptoms are defined as a claimant's "own description of [her] physical or mental impairment." 20 C.F.R. § 416.902(n).

[4] The Tenth Circuit characterizes this analysis as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The analysis under SSR 16-3p comports with this process, *Paulek v. Colvin,* 662 F. App'x 588, 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. This analysis is now termed the "consistency" analysis. *Id.* In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill,* 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding SSR 16-3p consistent with the prior approach taken by the Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve the symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms. *Id.* at 7-8. The ALJ's symptom findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan,* 552 F.3d at 1190 (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because symptom consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

      The Court finds no error in the ALJ's consistency analysis. The ALJ summarized Claimant's administrative hearing testimony in his decision. (R. 21). He specifically acknowledged Claimant's testimony that she experiences mood changes and episodes of crying due to her bipolar disorder and depression; experiences panic attacks when in crowds; needs a break every ten or fifteen minutes, but at least once per hour; has problems with her memory and ability to concentrate; and needs to be off five days per month. *Id.* The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.* In reaching this conclusion, the ALJ discussed a number of inconsistencies between Claimant's subjective allegations and the evidence of record, including: (1) the effectiveness of medication in improving Claimant's symptoms, (2) Claimant's repeated refusal to attend therapy, (3) the consistently normal mental status examinations of record, and (4) Claimant's activities of daily living. (R. 22-

24). The ALJ thus linked his consistency findings to the evidence and provided clear and specific reasons for his determination in compliance with the directives of *Cowan* and SSR 16-3p.

### E.  ALJ's Hypothetical Question was Proper

Finally, Claimant contends the ALJ erred in relying on VE testimony in response to a hypothetical question that matched the RFC, rather than including the additional limitations she claims. For the reasons set forth in Part V.A. above, the ALJ's RFC assessment was supported by substantial evidence and was therefore proper. Claimant's argument regarding the hypothetical question posed to the VE fails because it rests on alleged errors in the RFC assessment the Court has already rejected. *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment. The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

### VI.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this  27th  day of September, 2023.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE